UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
   UNITED STATES OF AMERICA

               -against-

   YASSER ASHBURN, JAMAL LAURENT, and
   TREVELLE MERRITT,

                           Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CR-0303 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Counsel for Defendant Trevelle Merritt has filed a letter indicating that Merritt "categorically opposes" the introduction of any statements Merritt has made to law enforcement in which all specific references to his co-defendant, Jamal Laurent, or "Tails," have been replaced with "the guy" or similar language. (Jan. 19, 2015, Def. Merritt's Ltr. (Dkt. 283).) In the letter, counsel states that in the event these modified statements are introduced into evidence, he "may have no choice but to refuse to partake in jury selection, refuse to open, refuse to cross examine witnesses[,] and refuse to give a closing argument so that the inevitable conviction would be reversed for ineffective assistance of counsel and the defendant Merritt will get a retrial wherein his ad nauseam statements to law enforcement would not be denuded of their meaning." (Id. at 1-2.)

First, the court is compelled to clarify which statements the court has already ruled are admissible, in modified form, and those with respect to which the court has not yet issued a decision. In its December 30, 2014, Memorandum and Order (the "Order"), the court held admissible modified versions of the five statements regarding the murder of Dasta James that the Government indicated it sought to admit at trial. (See Gov't Mem. in Opp'n to Def. Laurent's Omnibus Pre-Trial Mots. (Dkt. 180) at 22.) These statements include: (1) an oral statement

1

made to New York City Police Department ("NYPD") Detective Steven Orski at 9:15 p.m. on April 6, 2011; (2) a handwritten statement, signed at 11:15 p.m. that same night; (3) a second handwritten statement, signed at 12:45 a.m. on April 7, 2011; (4) an audio record of a statement provided to a Kings County Assistant District Attorney at 1:19 p.m. on April 7, 2011; and (5) an oral statement made to Federal Bureau of Investigation Special Agent Christopher J. Campbell and NYPD Detective William Vanpelt on April 19, 2011.[1] (Order (Dkt. 252) at 24.) The court has not yet, however, ruled on the admissibility of a proposed modified version of a handwritten statement Merritt signed at 1:55 a.m. on April 7, 2011, regarding a cell phone robbery that allegedly took place on January 12, 2011. (See Gov't Reply in Supp. of Mot. to Admit Evid. of Other Acts, Ex. A (Dkt. 230-1).)

Second, counsel's letter notwithstanding, the court finds no reason to revisit the decision in its Order applying Bruton v. United States, 391 U.S. 123 (1968), and its progeny in the Second Circuit, particularly United States v. Taylor, 745 F.3d 15, 28 (2d Cir. 2014), and United States v. Jass, 569 F.3d 47, 55 (2d Cir. 2009), to the facts of this case. In its Order, the court explained that under Taylor and Jass, the test for whether a modified statement complies with Bruton is whether: (1) the redacted statement gives any indication to the jury that the original statement contained actual names, and (2) whether the statement standing alone otherwise connects co-defendants to the crimes. Jass, 569 F.3d at 58 (noting the concern is whether there is an "overwhelming probability that a jury will not follow a limiting instruction that precludes its consideration of a redacted confession against a defendant other than the declarant").[2] With

---

[1] Referring to the date referenced in the Government's brief, the December 30, 2014, Memorandum and Order indicated that the date of this fifth statement was April 11, 2011, which was apparently in error. (See Gov't Mem. in Opp'n to Def. Laurent's Omnibus Pre-Trial Mots., Ex. C (Dkt. 180-3) at 9.)

[2] See also Gray v. Maryland, 523 U.S. 185, 195 (1998) (holding that redactions that replace a proper name with an obvious blank or the words "deleted" or "redacted," "are similar enough to Bruton's unredacted confessions as to warrant the same legal results").

2

respect to the five modified statements at issue, the court answered both questions in the negative (see Order at 39), and determined that the modified statements were admissible at trial consistent with Defendant Laurent's Sixth Amendment right to confrontation under Bruton. Counsel has not suggested any basis for finding this decision was in error, and the court discerns none.

The court also addressed Merritt's and Laurent's motions to sever in its Order. (See Not. of Mot. (Dkt. 171); Oct. 2, 2014, Def. Merritt's Ltr. (Dkt. 191).) In denying the motions, the court found that Defendants had failed to demonstrate that introduction of the modified statements would generate "substantial prejudice" "sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials," a determination committed to the "virtually unreviewable" discretion of the district court. (Id. at 41 (quoting United States v. Sampson, 385 F.3d 183, 190 (2d Cir. 2004); United States v. James, 712 F.3d 79, 104 (2d Cir. 2013)).) Counsel's letter suggests no grounds for concluding that the court abused its discretion.

Instead, twenty days later, counsel raises—for the first time—the argument that because the substitutions make it appear as though Merritt refused to name his co-conspirator, "[t]he proposed changes . . . will result in the conviction of [Merritt] because it will appear that he is holding out or being coy with law enforcement when was, rather, entirely forthcoming." (Jan. 19, 2015, Def. Merritt's Ltr. at 1.) In response, the Government points out that the Second Circuit has previously addressed similar claims by defendants who argue that such redactions are overly prejudicial because they violate the rule of completeness. (Jan. 20, 2015, Gov't's Ltr. (Dkt. 286) at 2.) In those cases, the court has held that the rule of completeness is violated "only where admission of the statement in redacted form distorts its meaning or excludes information substantially exculpatory of the declarant." United States v. Alvarado, 882 F.2d 645, 651 (2d Cir. 1989), overruled on other grounds by Bailey v. United States, 516 U.S. 137 (1995); see also

3

United States v. Mussaleen, 35 F.3d 692, 696-97 (2d Cir. 1994) (district court did not abuse its discretion in admitting redacted version of a statement that "did not unfairly distort the original, and certainly did not exclude substantially exculpatory information").

Here, the court agrees with the Government that there is little or no risk of prejudice to Merritt in admitting the five modified statements the court has already ordered are admissible in this case.[3] As an initial matter, the Government indicates that it "will not claim at trial that [] Merritt withheld information regarding the identity of his co-conspirator." (Jan. 20, 2015, Gov't's Ltr. at 2.) More critically, Merritt has failed to establish that the redactions unfairly distort the original statements or exclude substantially exculpatory information. See Alvarado, 882 F.2d at 651. Indeed, the original statements are just as damaging to Merritt as the redacted version. See Mussaleen, 35 F.3d at 696. The fact that Merritt readily disclosed the name of his co-conspirator in his statements to law enforcement does not tend to negate his guilt with respect to the murder of Dasta James, to which he repeatedly confessed his involvement. (See generally Gov't Mem. in Opp'n to Def. Laurent's Omnibus Pre-Trial Mots., Ex. C (Dkt. 180-3).)

Furthermore, in conducting this analysis—a matter that is committed to the court's discretion—the court must consider the non-declarant's right to confront the witnesses against him, as well as the interests of judicial economy advanced "by allowing for a joint trial of two defendants whose alleged criminal conduct arose from the same set of facts." Alvarado, 882 F.2d at 651. In this case, Laurent's Sixth Amendment right to confrontation, as well as the judicial economy to be achieved through conducting a joint trial, surely outweigh Merritt's interest in proving to the jury that when he confessed to committing multiple crimes he also sold

---

[3] The court does not address in this Memorandum and Order the admissibility of the proposed redacted version of Merritt's statement to law enforcement signed at 1:55 a.m. on April 7, 2011, regarding a cell phone robbery that occurred on January 12, 2011. This issue, on which the court expresses no opinion at this point, will be addressed in a forthcoming Memorandum and Order.

out his co-conspirator.[4] Therefore, Merritt's request to introduce unaltered versions of these five statements is DENIED.

What concerns the court more than Merritt's eleventh-hour argument,[5] however, is counsel's threat to intentionally deprive his client of his constitutional right to the effective assistance of counsel. (See Jan. 19, 2015, Def. Merritt's Ltr. at 1-2.) At a status conference on January 21, 2015, counsel told the court, "I am not going to shrink from my responsibility to defend [Merritt] down to the ground." (Jan. 21, 2015, Hr'g Tr. ("Hr'g Tr.") at 17:8-9; see also id. at 17:20-24 ("If I didn't use the words, we accept . . . the use of the nomenclature that the Court with others had decided upon.").) Accepting what counsel has stated on the record at face value, the court understood counsel to mean that despite what he wrote in his letter, he will zealously advocate for his client during all phases of the trial. (See id. at 16:7-10 ("Anyone who has a concern about this can read my lips. In 30 years, I've never shrunk from this responsibility and the trial of this cause is not going to be the first time that I have shrunk from my responsibility.").) In other words, counsel represented that he will participate in jury selection, will make an opening statement, will cross-examine the Government's witnesses, and will make a closing argument. (Cf. Jan. 19, 2015, Def. Merritt's Ltr. at 1-2.)

If, however, counsel's view of zealous advocacy requires him to ignore this court's Order—applying binding case law from the Supreme Court and the Second Circuit—and to deprive his client of his Sixth Amendment right to effective assistance of counsel, counsel is hereby warned that he would place himself in jeopardy of violating the rules of professional

---

[4] In light of the number of statements Merritt made to law enforcement, as well as the amount of detail he provided, the court questions the marginal value Merritt would obtain from further emphasizing his cooperation to the jury.

[5] The court notes that these statements were the subject of Defendant Laurent's Omnibus Pre-Trial Motion, which was fully briefed on October 7, 2014. (See Reply Mem. of Law in Further Supp. of Def. Laurent's Omnibus Pre-Trial Mots. (Dkt. 199).) While counsel's arguments are therefore over three months late, this extreme delay is inconsequential to the court's decision. Rather, even if counsel had made this argument when the court was considering Defendant Laurent's Omnibus Pre-Trial Motion, the court would have reached the same result.

5

conduct. For example, the American Bar Association Model Rules of Professional Conduct (the "ABA Model Rules") instruct that as an advocate, a lawyer is to "zealously assert[] the client's position under the rules of the adversary system." Model Rules of Prof'l Conduct Preamble [2] (1983). The ABA Model Rules further provide that a lawyer "shall provide competent representation to a client," Rule 1.1, and that a lawyer "shall act with reasonable diligence . . . in representing a client," Rule 1.3. While a lawyer is not "bound . . . to press for every advantage that might be realized for a client," nor does a lawyer's duty to act with reasonable diligence require the use of "offensive tactics," a lawyer "must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." Model Rules of Prof'l Conduct R. 1.3 cmt [1].

Furthermore, the New York State Rules of Professional Conduct provide that a lawyer "shall not intentionally: (1) fail to seek the objectives of the client through reasonably available means permitted by law and these Rules; or (2) prejudice or damage the client during the course of the representation except as permitted or required by these Rules." N.Y. Rules of Prof'l Conduct R. 1.1(c) (2009); see also id. R. 1.3 cmt. [1] ("A lawyer must also act with commitment and dedication to the interests of the client and in advocacy upon the client's behalf."). These Rules also instruct that a lawyer "may exercise professional judgment to waive or fail to assert a right or position of the client," but only "when doing so does not prejudice the rights of the client." Id. R. 1.2(e). And intentionally depriving a client of the effective assistance of counsel—especially in a criminal case in which the defendant faces possible life imprisonment if convicted (see Hr'g Tr. at 14:2-3)—would create a serious risk of prejudice to that client's rights under the Sixth Amendment of the Constitution.

Should counsel fail to carry out his responsibilities under these rules, he may be subject to disciplinary proceedings for misconduct. See Model Rules of Prof'l Conduct R. 8.4(a) ("It is professional misconduct for a lawyer to . . . violate or attempt to violate the Rules of Professional Conduct . . . ."); N.Y. Rules of Prof'l Conduct R. 8.4(a) (same). Cf. N.Y. Rules of Prof'l Conduct R. 8.4 cmt [4] (2011) ("A lawyer may refuse to comply with an obligation imposed by law if such refusal is based upon a reasonable good-faith belief that no valid obligation exists because, for example, the law is unconstitutional, conflicts with other legal or professional obligations, or is otherwise invalid. . . . [A] lawyer may not disregard a specific ruling or standing rule of a tribunal, but can take appropriate steps to test the validity of such a rule or ruling."). Moreover, in wholly and intentionally neglecting his duties to his client, and ignoring a lawful Order from this court, counsel may also be subject to sanctions, including criminal contempt under Federal Rule of Criminal Procedure 42. See also 18 U.S.C. § 401 (establishing power of a federal court to impose fines, imprisonment, or both, at its discretion, for contempt of its authority).

While the ABA Model Rules and New York Rules of Professional Conduct indicate that a criminal defense lawyer "may nevertheless so defend the proceeding as to require that every element of the case be established," Rule 3.1, it is also clear that a lawyer may not intentionally prejudice his client by refusing to engage in any form of advocacy, with the stated goal of depriving his client of his right to effective assistance of counsel in order to obtain a reversal on appeal. Counsel is so warned.[6]

SO ORDERED.

Dated: Brooklyn, New York
January 21, 2015

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[6] In light of Defendant Laurent's letter dated January 21, 2015 (see Jan. 21, 2015, Def. Laurent's Ltr. (Dkt. 287) at 2), counsel is further warned that at trial, he may not suggest to the jury or intimate in any way that "the guy" or "the other guy" mentioned in Merritt's statements is, in fact, Laurent. To do so would violate Laurent's Sixth Amendment right to confrontation under Bruton, and potentially even serve as grounds for a mistrial. In this context, counsel is reminded that the rules of professional responsibility also prohibit a lawyer from engaging in conduct "intended to disrupt the tribunal," or that is otherwise "prejudicial to the administration of justice." See N.Y. Rules of Prof'l Conduct R. 3.3(f)(4), R. 8.4(d); see also id. R. 3.3 cmt. [2] (noting lawyers have "special duties . . . as officers of the court to avoid conduct that undermines the integrity of the adjudicative process"); id. R. 8.4 cmt. [3] ("The prohibition on conduct prejudicial to the administration of justice is generally invoked to punish conduct, whether or not it violates another ethics rule, that results in substantial harm to the justice system comparable to those caused by obstruction of justice, such as advising a client to testify falsely, paying a witness to be unavailable, altering documents, repeatedly disrupting a proceeding, or failing to cooperate in an attorney disciplinary investigation or proceeding.").